**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In Re: | : | Chapter 7 |
| GERSHON BARKANY, | : | Case No. 8-14-72941 |
| Debtor, | : | |
| ------------------------------------------------- | : | |
| MARC A. PERGAMENT, Interim Chapter 7 Trustee Of The Estate Of Gershon Barkany, | : | |
| Plaintiff, | : | |
| v. | : | Adv. Proc. No. 8-15-08244 |
| ALAN GERSON, BRUCE MONTAGUE & PARTNERS, ALFRED SCHOENBERGER, MARINA DISTRICT DEVELOPMENT CO. LLC, BARKANY ASSET RECOVERY & MANAGEMENT LLC, DANIEL HIRSCHLER, JOSEPH ROSENBERG, AND GOLDBERG & RIMBERG PLLC, | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT**
**MARINA DISTRICT DEVELOPMENT CO. LLC'S MOTION TO DISMISS**

**Preliminary Statement**

The Trustee's Complaint against Marina District Development Co., LLC ("Borgata") must be dismissed pursuant to Fed. R. Bank. P. 7012(b) and Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted. There were no fraudulent conveyances to Borgata as a matter of law. The causes of action alleged against Borgata in the Complaint and any cross-claims must therefore be dismissed.

**Argument**

**Point I**

STANDARD FOR REVIEW

A motion to dismiss is properly evaluated under the familiar Fed. R. Civ. P. 12(b)(6) standard. Pursuant to Rule 12(b)(6), courts "must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *Patel v. Contemporary Classics of Beverly Hills,* 259 F.3d 123, 126 (2d Cir. 2001). This principle, however, is not applicable to legal conclusions. *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). In addition, "factual allegations must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007), and the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)(citation omitted). Even accepting the factual allegations in the Complaint as true, Plaintiff's legal conclusions are contrary to established legal principles. Because the facts alleged in the Complaint and any cross-claims do not raise a right or rights to relief as a matter of law, Borgata is entitled to dismissal of all claims and cross-claims.

**Point II**

TRANSFERS ON ACCOUNT OF AN EXISTING DEBT
ARE NOT FRAUDULENT CONVEYANCES

The Trustee's proposed Complaint contains nine causes of action against Borgata. The first eight which are the meat of the Complaint, sound in fraudulent conveyance under both the Bankruptcy Code and the New York Debtor and Creditor Law ("NY DCL"). The Trustee's Complaint includes claims for both actual fraud and constructive fraud, and those theories are examined in turn.

A. Trustee's Claims for Actual Fraud - 11 U.S.C. §548(a)(1)(A), NY DCL §276, and NY DCL §276-a. For the Trustee to succeed on these three claims, he must demonstrate that the Debtor or his agents made the transfers with the actual intent to hinder, delay, or defraud other entities to which Debtor was or became indebted to on or after the date of the transfers. These claims are for actual fraud (as opposed to constructive fraud) and must satisfy the heightened pleading standard of Fed. R. Civ. P. 9(b). *In re Dreier LLP*, 452 B.R. 391 (Bankr. S.D.N.Y. 2011). The Trustee must therefore plead facts establishing the actual fraudulent intent of the debtor. *Id.* In *In re Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir. 2005) the Second Circuit noted "'due to the difficulty of proving actual intent to hinder, delay, or defraud creditors, the pleader is allowed to rely on 'badges of fraud' to support his case, i.e. circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent." *Id.* at 56, *quoting Wall St. Assocs. v. Brodsky,* 257 A.D.2d 526, 529, 684 N.Y.S.2d 244, 247 (1st Dep't 1999). The Second Circuit also indicated that "a lack of specific allegations setting forth such badges of fraud, or otherwise implicating the defendant in intentional wrongdoing against creditors, would be fatal to a claim of

3

intentional fraudulent conveyance." *In re Actrade Financial Technologies Ltd.*, 337 B.R. 791, 809 (Bankr. S.D.N.Y. 2005).

The court in *Actrade* provided a fairly exhaustive lust of the common badges of fraud that can give rise to an inference of intent. Absent specific pleading of these badges, a complaint for actual fraudulent conveyance cannot stand:

> (1) lack or inadequacy of consideration;
> (2) the family, friendship or close associate relationship between the parties;
> (3) the retention of possession, benefit or use of the property in question;
> (4) the financial condition of the party sought to be charged both before and after the transaction in question;
> (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors;
> (6) the general chronology of the events and transactions under inquiry;
> (7) a questionable transfer not in the usual course of business; and
> (8) the secrecy, haste, or unusualness of the transaction.

*Id*. With the exception of the conclusory allegation that the transfer to Borgata was not for adequate consideration, the Trustee has not specifically alleged a single badge of fraud. The allegation of inadequate consideration is not only conclusory, but is an incorrect conclusion as a matter of law.

The Trustee's Complaint contains exactly three preliminary factual allegations regarding the alleged fraudulent transfer to Borgata. They are that (i) Barkany's assets were "fraudulently conveyed" to Borgata in the amount of $142,000; (ii) upon information and belief Barkany was insolvent at the time of the transfer; and (iii) upon information and belief the transfer diminished the assets of the bankruptcy estate. Complaint at ¶¶49-51. In the specific claims against Borgata, it is further conclusorily alleged only that the transfers were "made with the actual intent to hinder, delay, or defraud entities to which Barkany was or became indebted to on or after the date of the

4

transfers." Complaint at ¶202. *See also* Complaint ¶¶233, 236 (same claims under NY DCL §§276 and 276-a). Although the claims for actual fraud do not, several other claims do allege that the transfer was made for less than fair consideration. *See, e.g.* Complaint ¶¶207, 212, 217. A cursory reading of the Complaint makes it obvious that the Trustee did not even attempt to plead actual fraud with the specificity required. Even under the regular pleading standard, his Complaint contains only "threadbare recitals" of the elements of his claims "supported by mere conclusory statements." These do not suffice to satisfy any federal pleading standard. *Iqbal*, 556 U.S. at 662.

With respect to arguably the only allegation regarding badges of fraud - lack of fair consideration - the Trustee fails to recognize the well settled principle that the opportunity of winning more than the amount bet and the entertainment value of gambling constitute fair consideration. *In re Chomakos,* 69 F.3d 769 (6th Cir. 1995). Additionally, a transfer may not be set aside under any NY DCL §§276 and §276-a if the transferee gave fair consideration but did not have actual or constructive knowledge of the debtor's fraudulent intent. *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 640 (2d Cir. 1995). There is no allegation in the Complaint, nor could there be one made in good faith,[1] that Borgata knew or should have known that the Debtor's transfer was made with actual fraudulent intent. Thus, even if the Court were to impute that allegation of inadequate consideration from the claims for constructive fraud to the claims for actual

---

[1] The Trustee moved to intervene in a related case in the District Court for the Eastern District of New York, captioned *Barkany Asset Recovery and Management v. Marina District Development Co. LLC*, Docket No. 14-02602. In his proposed Complaint against Borgata in that case, the Trustee concedes that the Ponzi scheme facts were only "discovered from Barkany's records" and later through Barkany's confession. Proposed Complaint at ¶33 (Document No. 22 at Exhibit A). Borgata clearly did not have access to Barkany's records and his confession only became known well after the transfers at issue.

5

fraud, that lone allegation is legally insufficient to support the claims for actual fraud. Because there is not a single viable allegation regarding badges of fraud, the actual fraud claims must be dismissed.

B. <u>Trustee's Claims for Constructive Fraud - 11 U.S.C. §§548(a)(1)(B)(ii)(I)-(III), NY DCL §§273, 275</u>. Each of the Trustee's five claims for constructive fraudulent conveyance fails as a matter of law because an element of each and every claim is lack of fair consideration. The predicate element of all three claims arising under 11 U.S.C. §548(a)(1)(B)(ii) is that the debtor "received less than a reasonable equivalent value in exchange" for the transfer. 11 U.S.C. §548(a)(1)(b)(i). The same is true for NY DCL §§273and 275 both of which only apply to obligations "incurred without [a] fair consideration". As noted above, it is well settled that the opportunity of winning more than the amount bet and the entertainment value of gambling constitute fair consideration, and thus gambling losses are not fraudulent transfers as a matter of law. *In re Chomakos,* 69 F.3d 769 (6th Cir. 1995). Correspondingly, all the Trustee's claims for constructive fraudulent conveyance must fail as a matter of law.

The Trustee's fraudulent conveyance claims arising under NY DCL §§273 and 275 also fail because under New York law it is well settled that the repayment of an antecedent debt constitutes fair consideration. *In re Sharp*, 403 F.3d at 54, <u>citing</u> *HBE Leasing Corp.*, 48 F.3d at 634. "'The basic object of fraudulent conveyance law is to see that the debtor uses his limited assets to satisfy *some* of his creditors; it normally does not try to choose among them.'" *HBE Leasing Corp.*, 48 F.3d at 634 (internal citations omitted). Both prior to and after the transfer at issue, Borgata was a creditor of Mr. Barkany. Documents have already been provided by Borgata in this bankruptcy

6

proceeding demonstrating that Mr. Barkany played at Borgata via a credit line and that the fraudulent conveyance alleged by the Trustee was actually a payment made against Mr. Barkany's outstanding credit balance.  *See* November 11, 2014 Declaration of Jeremy M. Klausner, at Exhibit A, Bates No. B000030 (Document No. 67).

    C.   <u>Disallowance of Borgata's Claim - 11 U.S.C. §502(d)</u>.  Pursuant to 11 U.S.C. §502(d), the Court may disallow Borgata's claim in this case if it fails to turn over property from a transfer that is voidable under 11 U.S.C. §548.  The Trustee's final cause of action against Borgata arises under this section and seeks to disallow Borgata's claim against the Barkany bankruptcy estate.  As discussed in detail above, the Trustee's claims sounding in fraudulent conveyance, both actual and constructive, must fail as a matter of law.  Because the transfers to Borgata are not avoidable under 11 U.S.C. §548, the Court may not disallow Borgata's claim on this ground, and this final cause of action must be dismissed.

**Point III**

<u>REPLEADING WOULD BE FUTILE</u>

It is generally understood that leave to replead should be "liberally granted." *Rutolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2006), <u>*citing*</u> *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Leave to replead, however, should be denied where amending the pleading would be futile.  *Id*.  In this case, leave to re-plead would be futile because there is no set of facts the Trustee can plead that would satisfy the plausibility standard.

With respect to the claims for actual fraud, there are no facts establishing any of the badges of fraud.  As set forth above, there was fair consideration of the alleged fraudulent conveyance as a matter of law.  There is obviously no family, friendship or

close associate relationship between the Debtor and Borgata. The Debtor did not retain the possession, benefit or use of the property in question; he made a payment against his outstanding credit balance. The financial condition of Borgata (the party sought to be charged) both before and after the transaction in question is irrelevant; the transfer was on account of an antecedent debt and reduced Debtor's then liability to Borgata. There is only one alleged fraudulent conveyance to Borgata so there is no cumulative effect of a pattern or series of transactions. The general chronology clearly shows that Mr. Barkany gambled on credit at Borgata and made payments against his outstanding credit balance as required by New Jersey law.[2] The transfer to Borgata was in the usual course of business, was not made in secrecy or haste, and was far from unusual. In fact, the payment was made as required by New Jersey law regarding the extension of casino credit.

With respect to the claims for constructive fraudulent conveyance, no facts can overcome the law in this case. Gambling losses are not fraudulent conveyances as a matter of law. The opportunity to win and the entertainment value of gambling are fair consideration. *In re Chomakos,* 69 F.3d 769 (6th Cir. 1995). There is no set of facts that the Trustee can plead that will lead to a different result. Allowing the Trustee to replead

---

[2] In order to draw on a Borgata line of credit, a casino patron requests a "marker" for a specified amount. The "marker" is a counter check, generated by the Borgata casino system, with the patron's banking information, including ABA routing number and account number (provided by the patron in his credit application) made payable to Borgata. The patron signs the check, which is held as security against repayment of the credit. When a marker is requested, the marker is issued at the gaming table or directly from the casino cage cashier. New Jersey Division of Gaming Enforcement ("DGE") regulations require that casino credit be repaid within 45 days on all markers with a dollar amount in excess of $5,000.00. If the credit is not repaid within 45 days, Borgata is required to deposit the "marker" in satisfaction of the liability. See N.J.A.C. §19:45 *et seq.*

any of his claims would therefore be futile and his claims against Borgata should be dismissed with prejudice.

**Point IV**

THE CROSS-CLAIM MUST BE DISMISSED

In its Answer, Defendant Bruce Montague & Partners ("BM&P") generally alleges a cross claim against all co-defendants for contribution. There is no basis for this cross-claim against Borgata because Borgata bears no measure of culpability for BM&P's alleged conduct. The causes of action alleged by the Trustee against Borgata and BM&P, respectively, arise from completely separate transactions. Borgata (i) has no relationship to the $750,000 allegedly belonging to Barkany and in the possession of BM&P, (ii) does not possess such funds, (iii) did not and could not have converted those funds, (iv) did not and could not have become unjustly enriched thereby, and (v) is not and could not be responsible for BM&P's alleged breach of fiduciary duty to Gershon Barkany. Borgata cannot be kept in this case because of BM&P's conclusory and patently unfounded cross-claim.

**Conclusion**

The Trustee's Complaint fails to state a cause of action on which relief may be granted. The Trustee did not even attempt to plead actual fraud with the specificity required, as there are no facts evidencing actual fraud with respect to the Debtor's transfers to Borgata. The Trustee's claims sounding in actual fraud must therefore be dismissed. The Trustee's constructive fraudulent conveyance claims must also be dismissed because it is well settled that gambling losses are not fraudulent conveyances

as a matter of law. Given the foregoing, Defendant's motion should be granted in its entirety and with prejudice, since the repleading any fraudulent conveyance claims against Borgata would be futile.

Dated: Hackensack, NJ
       October 2, 2015                      By:  /s/ Jeremy Klausner
                                                                     Jeremy Klausner
                                                                     AGOSTINO & ASSOCIATES, P.C.
                                                                     *Attorneys for Defendant*
                                                                     14 Washington Place
                                                                     Hackensack, NJ 07601
                                                                     Telephone: (201) 488-5400
                                                                     jklausner@agostinolaw.com