**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>GERSHON BARKANY,<br><br>    Debtor. | Case No. 8-14-72941-las<br><br>Chapter 7 |
| Marc A. Pergament, Interim Chapter 7<br>Trustee of the Estate of Gershon Barkany,<br><br>    Plaintiff,<br><br>versus:<br><br>Alan Gerson, et al,<br><br>    Defendants. | Adversary Proceeding No.  8-15-08244-las |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
**COMPLAINT AND CROSS-CLAIMS PURSUANT TO FRCP 12(b)(6)**
**FOR FAILURE TO STATE A CLAIM**

TO THE HONORABLE LOUIS A. SCARCELLA
<u>UNITED STATES BANKRUPTCY JUDGE</u>:

   Defendant Barkany Asset Recovery & Management LLC ("<u>BARM</u>"), through its undersigned counsel, respectfully submits this memorandum of law in support of its motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Complaint (ECF No. 1) filed against it by Marc A. Pergament, Interim Chapter 7 Trustee ("<u>Interim Trustee</u>") on August 18, 2015 and the Cross-Claims (ECF No. 8, ¶¶ 438-40) filed against it by Bruce Montague & Partners ("<u>BM&P</u>") on September 18, 2015.

## INTRODUCTION

1.    On August 11, 2015, at a hearing held on the trustee election dispute that is pending before the Court, the Interim Trustee urged the Court to find that the Ludvik and Eva Hilman Family Partnership (the "Hilman Partnership") has an interest materially adverse to the estate and is thus barred from participating in the trustee election.   His principal argument concerned the Hilman Partnership's pending lawsuit against attorney Alan Gerson and his law firm BM&P, in which the Hilman Partnership seeks recovery of $750,000.00 which it alleges it delivered to Mr. Gerson's IOLA account on or about March 13, 2013.   The Interim Trustee contended (with apparently no more proof than a self-serving unsworn declaration alleged by counsel for Joseph Rosenberg to have been furnished by Mr. Gerson the evening before the hearing, a declaration that alleges receipt and transfers of funds but fails to attach any documentary evidence) that Mr. Gerson may have received the funds as Gershon Barkany's property and disbursed the funds to the defendants now named in the complaint (other than Mr. Gerson and his law firm).   In describing whether he should file suit on behalf of the estate, the Interim Trustee said:   "I have a very big concern, Your Honor, that, if I bring lawsuits we're running into issues where I'm bringing lawsuits without doing discovery.   I've tried to be very conservative in this estate until the Court decides who the trustee is, because I don't want any prejudice if Mr. Frankel becomes the permanent trustee." (Transcript at p. 54).   When questioned about whether the $750,000.00 had even become property of the estate, the Interim Trustee responded:   "I mean, I think now we're going down the road where how could anybody make that decision …. And the question is what was the deal between the [Hilman Partnership] and Mr. Gerson.   We don't have any of that, Your Honor.   We had no discovery.   There are no documents."   (Transcript at p. 56).

2.     Seven days later, on August 18, 2015, having apparently determined that his personal desire to create an appearance of materially adverse interest on the part of the Hilman Partnership outweighed any risk to the estate of proceeding without discovery or documentation and any possible prejudice to Mr. Frankel's potential administration of the estate, and even though under Bankruptcy Code § 546(a)(1)(A) the estate had almost one and one-half years remaining within which to file suit and faced no deadlines of any sort, the Interim Trustee filed the instant Complaint which, after reciting some background concerning Mr. Barkany's Ponzi schemes, consists of boiler-plate recitations of the elements of fraudulent conveyance actions under New York and bankruptcy law.

3.     On its face, the Complaint fails to state a claim for relief against BARM. Moreover, the Complaint wholly ignores facts known to, and documents in the possession of, the Interim Trustee, including that the alleged 2013 transfer to BARM, if made, was made in partial satisfaction, on a dollar-for-dollar basis, of a debt confessed by Mr. Barkany in 2011 and made the subject of a judgment of the Supreme Court of the State of New York in 2013. There is no evidence that BARM was not acting in good faith in 2013 or had any knowledge that Mr. Barkany was then acting in bad faith.

4.     Subsequently, Mr. Gerson's law firm, BM&P, which the Interim Trustee alleges is liable for the $750,000.00 provided by the Hilman Partnership under theories of conversion, unjust enrichment, monies had and received and breach of fiduciary duty, filed cross-claims (the "Cross-Claims") against BARM.  In its Cross-Claims, while denying that it received the $750,000.00 and that it conveyed anything to BARM, and without making a single factual allegation that BARM is culpable in any way, BM&P asserts that BARM is

liable to it for contribution and reimbursement of the transfer which the Interim Trustee alleged was made to BARM.

5.      BARM respectfully submits that the Complaint and the Cross-Claims, as against BARM, should be dismissed.

### **BACKGROUND**

6.      With regard to BARM, the Complaint alleges, entirely on information and belief, that on or about March 13, 2013 the Hilman Partnership transferred $750,000.00 to Barkany by delivering the proceeds to Mr. Gerson and his law firm and Barkany received those funds as part of his operation of a Ponzi scheme (Complaint, ¶¶ 26-27, 35 and 39) and that Mr. Gerson and his law firm conveyed $100,000.00 of Barkany's assets to BARM (Complaint, ¶¶ 52, 246, 251, 256, 261 and 272).  Then, without alleging anything more than the Interim Trustee's conclusions, the Complaint states, largely on information and belief, that the transfer to BARM diminished Barkany's assets (Complaint, ¶ 54), was made with actual intent to hinder, delay or defraud entities to which Barkany was or became indebted (Complaint, ¶¶ 247, 278 and 281), was made in exchange for less than reasonably equivalent value or fair consideration while Barkany was insolvent, had an unreasonably small amount of capital and intended to incur debts beyond his ability to pay (Complaint, ¶¶ 53, 252, 257, 262, 267-68 and 273) and that it should be avoided as a fraudulent conveyance (Complaint, ¶¶ 248-49, 253-54, 258-59, 263-64, 274, 276, 279).  Further, the Complaint seeks legal fees and disallowance of BARM's claim until the alleged transfer has been returned. (Complaint, ¶¶ 282 and 288-89).

7.      The Complaint says nothing about BARM's intent, good faith or lack of good faith in receiving the alleged transfer, and it does not contain a single allegation of fact

concerning the value or consideration provided to Barkany in exchange for the alleged transfer.

8.      This absence of allegations concerning value and consideration is especially striking because, as the Interim Trustee has acknowledged in other filings,[1] in addition to pleading guilty to defrauding unnamed victims: (i) in August 2011 Barkany executed an affidavit of confession of judgment (annexed here as Exhibit "A") in the amount of $58,000,000.00 plus interest in favor of certain named victims of his Ponzi scheme, on March 25, 2013 the Supreme Court, County of Queens entered judgment (annexed here as Exhibit "B") in favor of those victims in the amount of $66,609,424.74 and on August 14, 2013 those victims assigned (see annexed Exhibit "C") the judgment to BARM, which had been formed in 2010 to obtain and administer recoveries from Barkany for the benefit of those victims; and (ii) the law clearly provides that satisfaction of an antecedent debt is value and consideration.   Moreover, BARM's proof of claim in this proceeding (annexed as Exhibit "D")[2] acknowledges that BARM has received $22,893,674.10 in satisfaction of the judgment.   Neither prior to nor since filing the Complaint has the Interim Trustee asked BARM whether it received the alleged transfer and, if so, what consideration it provided in return for the transfer, and as of now the Interim Trustee has not responded to, or even acknowledged receipt of, BARM's October 2, 2015 request for documentation supporting his allegation that a transfer was made to BARM.

---

[1] *E.g.*, Complaint [ECF No. 1], ¶¶ 6-7, Adversary Proceeding No. 8-15-08267-las (filed 9/30/2015) (referencing affidavit of confession and judgment); Response to Motions to Resolve Election Controversy [ECF No. 206], ¶¶ 25-29, 31 and 33 and Exhibits 2-4, No. 8-14-72941-las (filed 5/22/2015) (referencing and annexing the affidavit of confession, the judgment and the assignment and recognizing that "a reduction [in the judgment] may have constituted good and valuable consideration" in exchange for a transfer).

[2] Exhibit "D" does not include the affidavit of confession of judgment, judgment, partial satisfaction and assignment, which are annexed to BARM's proof of claim.

9.     BARM respectfully submits that, as discussed more fully below, the Complaint fails to state a claim against BARM.

## LEGAL ARGUMENT

## THE COMPLAINT FAILS TO STATE A CLAIM

**A complaint must plead facts
stating a plausible claim**

10.     A motion to dismiss under Rule 12(b)(6), made applicable by Bankruptcy Rule 7012, requires a determination of whether the complaint properly states a claim under Rule 8. Rule 8 requires a plaintiff to include in the complaint "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009) (quoting Fed. R. Civ. Proc. 8(a)(2)).

11.     Although a court is to accept factual allegations in a complaint as true and draw all reasonable inferences in favor of the non-movant, *Roth v. Jennings*, 489 F.3d 499, 501 (2d Cir. 2007), a plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable . . . ." *Iqbal*, 556 U.S. at 678.

12.     Since the Supreme Court's decision in *Iqbal*, courts use a two-prong approach when considering a motion to dismiss. *See, e.g., Weston v. Optima Commc'ns Sys., Inc.*, 2009 WL 3200653, at *2 (S.D.N.Y. 2009) (acknowledging a "two-pronged" approach to deciding motions to dismiss); *S. Ill. Laborers' and Employers Health and Welfare Fund v. Pfizer, Inc.*, 2009 WL 3151807, at *3 (S.D.N.Y. 2009) (same); *Inst. for Dev. of Earth Awareness v. People for the Ethical Treatment of Animals*, 2009 WL 2850230, at *3 (S.D.N.Y. Aug. 28,

2009) (same). The court must first accept all factual allegations in the complaint as true, while discounting legal conclusions clothed in factual garb. *Iqbal*, 556 U.S. at 678-79; *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008). Then, the court must determine if these well-pleaded factual allegations state a "plausible claim for relief." *Iqbal*, 556 U.S. at 679. A claim is plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. The complaint must allege enough facts to "nudge[ ] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

13. Courts are not to make plausibility determinations in a vacuum. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Meeting the plausibility standard requires a complaint to plead facts that show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. at 678 (citing *Twombly*, 550 U.S. at 557). A complaint that only pleads facts that are "merely consistent with a defendant's liability" does not meet the plausibility requirement. *Id*. (quoting *Twombly*, 550 U.S. at 557 (internal quotation marks omitted)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id*. at 678 (quoting *Twombly*, 550 U.S. at 555 (internal quotation marks omitted)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. The Court is not required to "conjure up unpled

allegations to save a complaint." *Systems Contractors Corp. v. Orleans Parish Sch. Bd.*, 1996 U.S. Dist. LEXIS 14258, at *5, 1996 WL 547414, at *1 (E.D. La. 1996) (internal quotations omitted). *See also Slotnick v. Striviskey*, 560 F.2d 31, 33 (1st Cir. 1977) ("courts need not conjure up unpleaded facts to support these conclusory suggestions"), *cert. denied*, 434 U.S. 1077 (1978),

**The Court may consider materials**
**in addition to the complaint**

14.     In ruling on a motion pursuant to Rule 12(b)(6), the Court may consider the complaint, documents attached to the complaint, documents incorporated into the complaint by reference, certain documents omitted from the complaint but attached to the motion and matters subject to judicial notice. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991) (court may consider both exhibits attached to complaint and exhibits omitted from complaint but attached to defendants' motion papers, when plaintiffs undisputedly were on notice of exhibits' content and exhibits were integral to claim).

**Claims for intentional fraudulent conveyance**
**must be pleaded with particularity**

15.     Where, as here, claims are asserted for intentional fraudulent conveyance, as opposed to constructive fraudulent conveyance, the complaint must also satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." "The purpose of Rule 9(b) is to protect the defending party's reputation, to discourage meritless accusations, and to provide detailed notice of fraud claims to defending parties." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). To pass muster under Rule 9(b), "a complaint must allege with some specificity the acts

constituting fraud … conclusory allegations that defendant's conduct was fraudulent or deceptive are not enough." *Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings, Ltd*, 85 F. Supp. 2d 282, 293 (S.D.N.Y. 2000).

16.    "Rule 9(b) is applicable to claims under § 548(a)(1)(A) of the Bankruptcy Code, as well as to State law claims of intentional fraudulent conveyance under § 276 of the [New York Debtor & Creditor Law]." *In re Actrade Financial Technologies Ltd.*, 337 B.R. 791, 801  (Bankr. S.D.N.Y. 2005).  *See also In re Sharp Int'l Corp.*, 403 F.3d 43, 55 (2d Cir. 2005); *Atlanta Shipping Corp., Inc. v. Chem. Bank*, 818 F.2d 240, 251 (2d Cir. 1987).

**The Complaint fails to state a claim for**
**constructive fraudulent conveyance**

17.    Section 548(a)(1)(B) of the Bankruptcy Code permits the trustee to avoid a transfer if he can establish "(1) that the debtor had an interest in property; (2) that a transfer of that interest occurred within one year [now two years] of the filing of the bankruptcy petition; (3) that the debtor was insolvent at the time of the transfer or became insolvent as a result thereof; and (4) that the debtor received less than a reasonably equivalent value in exchange for such transfer." *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 535, 114 S. Ct. 1757, 128 L. Ed. 2d 556 (1994) . In a similar formulation, New York Debtor & Creditor Law ("DCL") §§ 273-75 provide that "a conveyance by a debtor is deemed constructively fraudulent if it is made without 'fair consideration,' and (*inter alia*) if one of the following conditions is met: (i) the transferor is insolvent or will be rendered insolvent by the transfer in question, DCL § 273; (ii) the transferor is engaged in or is about to engage in a business transaction for which its remaining property constitutes unreasonably small capital, DCL §

274; or (iii) the transferor believes that it will incur debt beyond its ability to pay, DCL §

275." *Sharp*, 403 F.3d at 53.

18.     DCL § 272 further provides, in pertinent part, that "[f]air consideration is

given for property or an obligation, a. When in exchange for such property, or obligation, as

a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is

satisfied."

19.     Under New York law, the party seeking to have the transfer set aside has the

burden of proof on the element of fair consideration and, since it is essential to a finding of

lack of fair consideration, lack of good faith. *United States v. McCombs*, 30 F.3d 310, 326

n. 1 (2d Cir. 1994). The Bankruptcy Code also provides that good faith is relevant in a

constructive fraud case, but unlike New York law, § 548(c) of the Bankruptcy Code

"designates the transferee's good faith as an affirmative defense which may be raised and

proved by the transferee at trial." *Gredd v. Bear, Stearns Secs. Corp. (In re Manhattan Inv.

Fund, Ltd.)*, 310 B.R. 500, 508 (Bankr. S.D.N.Y. 2002) .

20.     Bankruptcy Code § 548(d)(2) defines the term "value" as "property, or

satisfaction or securing of a present or antecedent debt of the debtor. . . ." 11 U.S.C. §

548(d)(2).  Because fraudulent conveyance laws are intended to protect a debtor's creditors,

"the analysis of reasonable value must be determined from the creditors' standpoint."  *In re

Waterford Wedgewood USA, Inc.*, 500 B.R. 371 (Bankr. S.D.N.Y. 2013).  To determine

whether a fair economic exchange has occurred, courts look to the circumstances

surrounding the transfer. *Balaber-Strauss v. Lawrence*, 264 B.R. 303, 307-08 (S.D.N.Y.

2001). "Whether a transfer is for reasonably equivalent value is largely a question of fact, the

determination of which perforce depends on all the circumstances surrounding the

transaction." *American Tissue Inc. v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 351 F. Supp. 2d 79, 105 (S.D.N.Y. 2004).

21.     Similarly, under New York law, the recipient of the debtor's property provides fair consideration by either conveying property or discharging an antecedent debt, provided that such exchange is a "fair equivalent" of the property received or discharged. *Sharp*, 403 F.3d at 53 n. 3. "The existence of a fair exchange must be determined from the perspective of creditors rather than from the vantage point of the debtor." *Interpool Ltd. v. Patterson*, 890 F.Supp. 259, 267 (S.D.N.Y. 1995). *See also Musso v. Herman (In re Testmetges)*, 85 B.R. 683, 696 (Bankr. E.D.N.Y. 1988) ("The touchstone is the unjust diminution of the estate of the debtor that would otherwise be available to the creditors."). Whether fair consideration has been given in any circumstance is fact-driven, and not subject to any mathematical formula. *McCombs*, 30 F.3d at 326.

22.     In the present case, the Complaint alleges that the $750,000.00 wired by the Hilman Partnership to Mr. Gerson was Barkany's and that, at the time of the alleged transfer to BARM, Barkany was insolvent, engaged in a business for which he was left with unreasonably small capital and was incurring debts which he was unable to pay.[3] But, the Complaint states nothing concerning the value or consideration BARM provided or did not provide in exchange for the alleged transfer, other than its conclusions that the "BARM Transfer was made in exchange for less than reasonably equivalent value" (Complaint ¶¶ 252 and 262), "Barkany did not receive fair consideration in exchange for the BARM Transfer

---

[3] The Complaint offers no facts or documentation supporting this allegation, nothing beyond the Interim Trustee's information and belief. Furthermore, as the Court is aware, the Hilman Partnership considers that the funds remained its property.

within the meaning of New York Debtor and Creditor Law § 272" (Complaint ¶ 268) and "the BARM Transfer diminished the assets of Barkany's bankruptcy estate" (Complaint ¶ 54). Whether BARM provided fair consideration or reasonably equivalent value is "largely a question of fact, the determination of which perforce depends on all the circumstances surrounding the transaction." *American Tissue*, 351 F. Supp. 2d at 105. Yet, the Complaint alleges no facts.

23.    Perhaps the Complaint is silent because the Interim Trustee has no facts to allege. After all, just seven days before filing the Complaint, in referring to the possibility of commencing this proceeding he expressed concern about "bringing lawsuits without doing discovery" and acknowledged that he has no documents. Or, perhaps it is because he knows that any transfer to BARM was made in partial satisfaction of the antecedent debt Barkany owed to the victims of his 2008-2010 Ponzi scheme and thus in no way diminished Barkany's estate.[4]   Regardless, the Complaint fails to allege facts which, if proven, would demonstrate that Barkany received less than reasonably equivalent value or fair consideration for the alleged transfer.

24.    Moreover, under New York law, good faith is an element of fair consideration, the absence of which the plaintiff must plead and prove. *McCombs*, 30 F.3d at 326. To establish a lack of good faith under the Debtor & Creditor Law, the plaintiff must make an initial showing in the pleadings that the defendant was not only aware of the fraud but actually participated in it. *Sharp Intl Corp. v. State Street Bank & Trust Co. (In re Sharp*

---

[4] BARM submits that the Court may consider the affidavit of confession, judgment, assignment and proof of claim annexed hereto as Exhibits "A," "B," "C" and "D" in evaluating whether the Interim Trustee has stated a claim. The Interim Trustee is indisputably on notice of their contents, as set forth in footnote 1 above, and as they are records of this Court and the New York Supreme Court, this Court may take judicial notice of them.

*Int'l Corp.)*, 302 B.R. 760 at 781 ("absent any allegations of [defendant's] participation in the fraud . . . this knowledge [of the fraud] alone is not sufficient to establish a lack of good faith . . ." under the DCL). The Interim Trustee has not pleaded any facts indicating that BARM lacked good faith in receiving the alleged transfer.[5]

25.    BARM respectfully submits that the Complaint fails to state a claim for constructive fraudulent transfer under either the Bankruptcy Code or the New York Debtor and Creditor Law.

**The Complaint fails to state a claim for**
**intentional fraudulent conveyance**

26.    The Interim Trustee also seeks recovery of the alleged transfer to BARM as an intentional fraudulent conveyance under Bankruptcy Code § 548(a)(1)(A) and New York Debtor & Creditor Law § 276. Bankruptcy Code § 548(a)(1)(A) provides that a transfer of an interest of the debtor in property may be avoided "if the debtor voluntarily or involuntarily made such transfer … with actual intent to hinder, delay, or defraud any entity to which the debtor was or became … indebted." DCL § 276 allows recovery of every "conveyance made … with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors."

27.    Cases under § 548(a)(1)(A) establish that it is the intent of the transferor and not the transferee that is relevant for purposes of pleading a claim for intentional fraudulent conveyance under the Bankruptcy Code. *Hayes v. Palm Seedlings Partners-A (In re Agric. Research & Tech. Group, Inc.)*, 916 F.2d 528, 536 (9th Cir. 1990); *Plotkin v. Pomona Valley*

---

[5] Even if the Interim Trustee were able to allege that BARM received the alleged transfer in bad faith, "bad faith does not appear to be an articulable exception to the broad principle that 'the satisfaction of a preexisting debt qualifies as fair consideration for a transfer of property.'" *Sharp*, 403 F.3d at 54 (quoting *Pashaian v. Eccelston Props.*, 88 F.3d 77, 85 (2d Cir. 1996)).

*Imports, Inc. (In re Cohen)*, 199 B.R. 709, 717 (B.A.P. 9th Cir. 1996); *Universal Clearing House Co. v. Abbott (In re Indep. Clearing House Co.)*, 77 B.R. 843, 860 (D. Utah 1987); *In re Churchill Mortgage Inv. Corp.*, 256 B.R. 664, 675-76 (Bankr. S.D.N.Y. 2000) ; *Martino v. Edison Worldwide Capital (In re Randy)*, 189 B.R. 425, 438 (Bankr. N.D. Ill. 1995). Case law construing New York law is not entirely clear on this point. In *HBE Leasing Corp. v. Frank*, 61 F.3d 1054, 1059 n. 5 (2d Cir. 1995), the Second Circuit referred only to the intent of the transferor in a case under DCL § 276. Other cases hold that the intent of the transferor and the transferee must be properly pleaded to state a claim for relief under DCL § 276. *Picard v. Taylor (In re Park S. Sec., LLC)*, 326 B.R. 505, 2005 WL 1389134, at 7-8 (Bankr. S.D.N.Y. 2005); *Sullivan v. Messer (In re Corcoran)*, 246 B.R. 152 (E.D.N.Y. 2000); *Gentry v. Kovler (In re Kovler)*, 249 B.R. 238 (Bankr. S.D.N.Y. 2000). The key point, however, is that "intentional fraudulent conveyance claims should be relegated to their proper sphere, *i.e.*, where there is a knowing intent on the part of the defendant to damage creditors. This point is as well taken under § 548(a)(1)(A) of the Bankruptcy Code as under § 276 of the DCL." *Actrade*, 337 B.R. at 809.

28.    Additionally, to state a claim for intentional fraudulent conveyance the complaint must connect the allegations against the defendant to a scheme to defraud creditors. *Sharp*, 403 F.3d at 56. In *Sharp*, the alleged fraud related to the manner in which Sharp obtained its funds, not its subsequent payment of part of those funds to the defendant. The Court held that the complaint "inadequately alleges fraud with respect to the transaction that Sharp seeks to avoid." *Id*. Continuing, the Court stated that the "$12.25 million payment was at most a preference between creditors and did not 'hinder, delay, or defraud either present or future creditors.'" *Id.*

14

29.     Although the Interim Trustee alleges Barkany received $750,000.00 from the Hilman Partnership as part of his operation of a Ponzi scheme (Complaint, ¶ 27) and that Mr. Gerson and his law firm conveyed $100,000.00 of Barkany's assets to BARM (Complaint, ¶ 52), it does not allege any facts which if proven would show that the alleged transfer to BARM was made with the actual intent, on the part of either Barkany or BARM, to hinder, delay or defraud Barkany's creditors.  To paraphrase *Sharp*, *supra*, the alleged fraud relates to the manner in which Barkany obtained his funds, not to his alleged transfer of some of those funds to BARM.  As in *Sharp*, the Complaint "inadequately alleges fraud with respect to the transaction that [the Interim Trustee] seeks to avoid." The alleged payment to BARM was "at most a preference between creditors."

30.     BARM respectfully submits that the Complaint fails to state a claim for intentional fraudulent transfer under either the Bankruptcy Code or the New York Debtor and Creditor Law.

## THE CROSS-CLAIMS FAIL TO STATE A CLAIM

31.     BM&P's Cross-Claims are found in three paragraphs at the end of its answer. (ECF No. 8, ¶¶ 438-40).  Taken together they state that, to the extent BM&P is found liable to the Interim Trustee, it is entitled to contribution from BARM in the proportion that the culpable conduct attributed to BARM bears to the entire measure of responsibility and to reimbursement from BARM as alleged ultimate recipient of the alleged transfer.  These allegations are insufficient to state a claim.

32.     Contribution is a tort remedy and, as BM&P acknowledges, is based on culpable conduct.  But, the Complaint and the Cross-Claims do not allege any facts which, if proven, would demonstrate that BARM was culpable in any way or for any reason.  Indeed,

the Complaint and the Cross-Claims do not even state a conclusion that BARM was culpable. Thus, BM&P has not stated a claim for contribution.

33.    Further, and putting aside for now that, as a creditor of Barkany who received payment in good faith BARM would have a complete defense to having to return the payment, if it is demonstrated that BARM received what is determined to be Barkany's property, it would be the Interim Trustee and not BM&P who would have the right to recover that payment. BM&P has no right to assert a claim for return of property that did not belong to it.[6]

34.    BARM respectfully submits that the Cross-Claims fail to state a claim.

## CONCLUSION

For the reasons stated above, the Complaint and Cross-Claims should be dismissed, with prejudice, for failure to state a claim against BARM.

Dated: October 19, 2015

　　　　　　　　　　　　　　　　　　　　_s/ Alan H. Katz_____
　　　　　　　　　　　　　　　　　　　　Shalom Jacob
　　　　　　　　　　　　　　　　　　　　sjacob@lockelord.com
　　　　　　　　　　　　　　　　　　　　Allen C. Wasserman
　　　　　　　　　　　　　　　　　　　　awasserman@lockelord.com
　　　　　　　　　　　　　　　　　　　　Alan H. Katz
　　　　　　　　　　　　　　　　　　　　akatz@lockelord.com
　　　　　　　　　　　　　　　　　　　　LOCKE LORD LLP
　　　　　　　　　　　　　　　　　　　　3 World Financial Center
　　　　　　　　　　　　　　　　　　　　New York, New York 10281
　　　　　　　　　　　　　　　　　　　　Telephone:    (212) 415-8600
　　　　　　　　　　　　　　　　　　　　Facsimile:    (212) 303-2754

　　　　　　　　　　　　　　　　　　　　Counsel to Barkany Asset Recovery &
　　　　　　　　　　　　　　　　　　　　Management LLC

NY 803992v.2

---

[6] Moreover, according to BM&P's allegations (ECF No. 8, ¶ 26) and documentary evidence attached to the Hilman Partnership's amended proof of claim (Proof of Claim No. 11), the Hilman Partnership transferred the $750,000.00 not to BM&P but to Mr. Gerson.

# Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

-------------------------------------------------------------------x

**CREDITORS: CORTLAND REALTY
INVESTMENTS LLC, JORDAN MOST, SETH
FARBMAN, GERALD PINSKY, MORDECHAI
HELLMAN, MOSHE SCHREIBER, SHALOM
MAIDENBAUM, CHARLES SILBERBERG, DEKEL
LLC,**

                  Plaintiffs,

              against

**DEBTORS: GERSHON BARKANY, THE PRATT
PARK GROUP, PRATT KARE LLC, PRATT KARE
INC., PRATT FORECLOSURE, LLC, HOWELL
BRONX LLC, PRATT ESPLANADE LLC, PRATT
LENDERS LLC, PRATT LENDERS, INC., PRATT
APPLIANCE LLC, PRATT CORTLAND LLC, PRATT
SIGNATURE, LLC, PRATT MANAGEMENT LLC,
PRATT PARK MANAGEMENT, LLC, PRATT LIFE
LLC, PRATT DR TR LLC, MINNEAPOLITAN LLC,
MORGAN 86, INC., SAMZ18 LLC,**

                  Defendants.

-------------------------------------------------------------------x

Index No. 5619/13

AFFIDAVIT OF
CONFESSION OF
JUDGMENT

STATE OF NEW YORK   )
                    ) ss.:
COUNTY OF NEW YORK   )

      GERSHON BARKANY ("Barkany" or "Deponent"), being duly sworn, deposes and says

that:

      1.      Deponent is the principal of The Pratt Park Group, Pratt Kare LLC, Pratt Kare

Inc., Pratt Foreclosure, LLC, Howell Bronx LLC, Pratt Esplanade LLC, Pratt Lenders LLC, Pratt

Lenders, Inc., Pratt Appliance LLC, Pratt Cortland LLC, Pratt Signature, LLC, Pratt

Management LLC, Pratt Park Management, LLC, Pratt Life LLC, Pratt DR TR LLC,

Minneapolitan LLC, Morgan 86, Inc., and Samz18 LLC (the "Debtor Entities").

2.    Deponent makes this affidavit on behalf of himself and is duly authorized to make

this affidavit on behalf of the Debtor Entities.

3.    Deponent and the Debtor Entities hereby confess Judgment herein and authorize

entry thereof against defendants jointly and severally in the sum of Fifty Eight Million Dollars

($58,000,000) plus such other amounts as are set forth in paragraph 5(G) below.

4.    Deponent resides at  622 Jarvis Avenue, Far Rockaway, New York, 11691.

Deponent, on behalf of himself and the Debtor Entities, authorizes entry in Queens County, New

York.

5.    This confession of judgment is for a debt justly due to the Creditors arising from

the following facts:

(A)    Deponent repeatedly engaged in fraudulent and unauthorized practices and

conveyances which victimized the Creditors.  Deponent employed a variety of means in

this fraud, including the solicitation of funds for real estate and loan transactions which,

unbeknownst to Plaintiffs, were not as represented or altogether non-existent.

(B)    In each case, the Creditors provided funds for specific purposes and

required repayment within a fixed and agreed period of time.  The transactions involved

loans by various Creditors directly to Deponent or the Debtor Entities.  Deponent also

solicited these parties to participate in various real estate transactions involving

commercial or residential properties.

2013 SEP 25  AM 9: 15
QUEENS COUNTY CLERK
FILED & RECORDED

(C)     The loans and real estate transactions were generally shams, fabricated by Deponent to serve as a vehicle to separate Creditors from their money.  Often, Deponent would take the documents from legitimate transactions Deponent had been involved in, and doctor them by changing the names, properties and other information and present them to potential investors for use in a wholly or partially fictitious transaction.  On other occasions, Deponent would obtain or find documents from law firms under false pretenses and use them to create the illusion of a real and legitimate "investment opportunity."

(D)     While some of the earlier transactions did produce returns, when the transactions did not do so, Deponent would resort to reporting fictitious or falsely inflated returns, making some payments and, on certain occasions, trying to get the creditors to roll over payments into new transactions.  In reality, their money had been used to pay off other creditors or was otherwise misappropriated by Deponent.

(E)     In a typical transaction, the creditor or lender agreed to make a loan to, or a deposit for the benefit of Deponent, a designated Debtor Entity, or the borrower for a specified period of time.  In connection with these transactions, creditors would pay Deponent or one of Deponent's entities directly, or were directed to make a wire transfer to an attorney escrow account at a law firm Deponent used for many of the transactions.  At the end of the agreed term, Deponent or the Debtor Entity was to return to each creditor the entire principal, accrued interest, and any other outstanding amounts, depending upon the terms agreed upon with each creditor.

(F)     From time to time Deponent would have checks issued to the Creditors as full or partial payment of principal, interest and/or other amounts.  On certain occasions,

-3-

the Creditors would redeposit these checks for Deponent's benefit in new or other

transactions based on Deponent's false reports of successful results. On other occasions,

Deponent solicited new funds from the Creditors. Deponent then used these funds and

additional monies from other parties to make payments, thus encouraging new

"investments." Deponent also paid himself millions of dollars for generating these

results.

(G)    The Creditors loaned certain funds to Deponent and/or one or more of the

Debtor Entities to loan and/or advance in connection with certain transactions with third

parties solely in accordance with the Creditors' instructions and Deponent's

representations. Deponent and the Debtor Entities generally were represented by counsel

in connection with such transactions and such transactions were entered into a legal and

enforceable manner. The funds provided to Deponent and/or the Debtor Entities often

were deposited in attorney escrow accounts. Deponent has advised the Creditors that a

substantial portion of their funds were lost or impaired. Deponent acknowledges that he

and the Debtor Entities are indebted to the Creditors in the collective amount of

approximately $58,000,000.00 plus interest at the legal rate for judgments and payment

and/or reimbursement of all professional fees and expenses incurred by the Creditors in

connection with repayment of amounts loaned and/or advanced to Deponent and/or the

Debtor Entities.

2013 MAR 25 AM 9: 15

QUEENS COUNTY CLERK
FILED & RECORDED

6.    The amount confessed does not exceed the liability of deponent and the Barkany

entities to Plaintiffs.

Sworn to before me this

ST. day of AUGUST 2011

*Ann T. Raffloer (signature)*

ANN T. RAFFLOER
Notary Public, State of New York
No. 24-4918523
Qualified in Kings County
Certificate Filed in New York County
Commission Expires Feb 1, 20__

Gershon Barkany

For Himself and on behalf of The Pratt Park
Group, Pratt Kare LLC, Pratt Kare Inc.,
Pratt Foreclosure, LLC, Howell Bronx LLC,
Pratt Esplanade LLC, Pratt Lenders LLC,
Pratt Lenders, Inc., Pratt Appliance LLC,
Pratt Cortland LLC, Pratt Signature, LLC,
Pratt Management LLC, Pratt park
Management, LLC, Pratt Life LLC, Pratt
DR TR LLC, Minneapolitan LLC, Morgan
86, Inc., and Samz18 LLC

NY 649355v.1

QUEENS COUNTY CLERK
FILED & RECORDED

2013 MAR 25 AM 9: 15

# Exhibit B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

------------------------------------------------------------x

**CREDITORS:** CORTLAND REALTY
INVESTMENTS LLC, JORDAN MOST, SETH
FARBMAN, GERALD PINSKY, MORDECHAI
HELLMAN, MOSHE SCHREIBER, SHALOM
MAIDENBAUM, CHARLES SILBERBERG, DEKEL
LLC,

                  Plaintiffs,

             against

**DEBTORS:** GERSHON BARKANY, THE PRATT
PARK GROUP, PRATT KARE LLC, PRATT KARE
INC., PRATT FORECLOSURE, LLC, HOWELL
BRONX LLC, PRATT ESPLANADE LLC, PRATT
LENDERS LLC, PRATT LENDERS, INC., PRATT
APPLIANCE LLC, PRATT CORTLAND LLC, PRATT
SIGNATURE, LLC, PRATT MANAGEMENT LLC,
PRATT PARK MANAGEMENT, LLC, PRATT LIFE
LLC, PRATT DR TR LLC, MINNEAPOLITAN LLC,
MORGAN 86, INC., SAMZ18 LLC,

                 Defendants.

------------------------------------------------------------x

Index No. 5619/2013

JUDGMENT

2013 DEC 25 AM 9: 15

QUEENS COUNTY CLERK
FILED & RECORDED

       Upon reading and filing the annexed affidavit of confession of judgment, sworn to on the

1st day of August, 2011, by the defendants, Gershon Barkany, The Pratt Park Group, Pratt Kare

LLC, Pratt Kare Inc., Pratt Foreclosure, LLC, Howell Bronx LLC, Pratt Esplanade LLC, Pratt

Lenders LLC, Pratt Lenders, Inc., Pratt Appliance LLC, Pratt Cortland LLC, Pratt Signature,

LLC, Pratt Management LLC, Pratt Park Management, LLC, Pratt Life LLC, Pratt DR TR LLC,

Minneapolitan LLC, Morgan 86, Inc., and Samz18 LLC (collectively the "Debtors"), it is

~~ORDERED~~, ADJUDGED ~~AND DECREED~~, that the plaintiffs, CORTLAND REALTY

INVESTMENTS LLC, JORDAN MOST, SETH FARBMAN, GERALD PINSKY,

2013/5619 AFFT.OFCONFESSION JUDGMENT BY CONFESSION (Page 2 of 18)

MORDECHAI HELLMAN, MOSHE SCHREIBER, SHALOM MAIDENBAUM, CHARLES

SILBERBERG, DEKEL LLC, residing at c/o Allen C. Wasserman, Locke Lord LLP, 3 World

Financial Center, New York, New York, recover of the defendants Gershon Barkany, residing at

622 Jarvis Avenue, Far Rockaway, New York 11691;  The Pratt Park Group residing at 77

Spruce Street, Suite 300R, Cedarhurst, New York, 11516; Pratt Kare LLC residing at 77 Spruce

Street, Suite 300R, Cedarhurst, New York, 11516; Pratt Kare Inc. residing at 77 Spruce Street,

Suite 300R, Cedarhurst, New York, 11516; Pratt Foreclosure, LLC residing at 77 Spruce Street,

Suite 300R, Cedarhurst, New York, 11516; Howell Bronx LLC residing at 77 Spruce Street,

Suite 300R, Cedarhurst, New York, 11516; Pratt Esplanade LLC residing at 77 Spruce Street,

Suite 300R, Cedarhurst, New York, 11516; Pratt Lenders LLC residing at 77 Spruce Street,

Suite 300R, Cedarhurst, New York, 11516; Pratt Lenders, Inc. residing at 77 Spruce Street, Suite

300R, Cedarhurst, New York, 11516; Pratt Appliance LLC residing at 77 Spruce Street, Suite

300R, Cedarhurst, New York, 11516; Pratt Cortland LLC residing at 77 Spruce Street, Suite

300R, Cedarhurst, New York, 11516; Pratt Signature, LLC residing at 77 Spruce Street, Suite

300R, Cedarhurst, New York, 11516; Pratt Management LLC residing at 77 Spruce Street, Suite

300R, Cedarhurst, New York, 11516; Pratt Park Management, LLC residing at 77 Spruce Street,

Suite 300R, Cedarhurst, New York, 11516; Pratt Life LLC residing at 77 Spruce Street, Suite

300R, Cedarhurst, New York, 11516; Pratt DR TR LLC residing at 77 Spruce Street, Suite 300R,

Cedarhurst, New York, 11516; Minneapolitan LLC residing at 77 Spruce Street, Suite 300R,

Cedarhurst, New York, 11516; Morgan 86, Inc. residing at 77 Spruce Street, Suite 300R,

Cedarhurst, New York, 11516; and Samz18 LLC residing at 77 Spruce Street, Suite 300R,

Cedarhurst, New York, 11516, jointly and severally the sum of $58,000,000, with statutory

2013 FEB 25 AM 9: 15
QUEENS COUNTY CLERK
FILED & RECORDED

interest thereon from August 1, 2011 in the amount of $ 8,609,424.74, without costs, amounting

in all to the sum of $ 66,609,424.74, and that the plaintiff have execution therefor.

— DOCKET

Judgment signed this 25 YH day of MARCH, 2013.

*Audrey I. Pheffer*

Clerk

NY 700538v.1

DOCKETED BY SD 79

2013 MAR 25 AM 9: 15

QUEENS COUNTY CLERK
FILED & RECORDED

# Exhibit C

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

-------------------------------------------------------------------x

**CREDITORS:** CORTLAND REALTY                    :
INVESTMENTS LLC, JORDAN MOST, SETH            :        Index No. 5619/2013
FARBMAN, GERALD PINSKY, MORDECHAI           :
HELLMAN, MOSHE SCHREIBER, SHALOM            :
MAIDENBAUM, CHARLES SILBERBERG, DEKEL    :    **ASSIGNMENT OF JUDGMENT**
LLC,                                                                      :
                                                                             :
                            Plaintiffs,                                :
                                                                             :
                                                                             :
                        against                                      :
                                                                             :
**DEBTORS:**  GERSHON BARKANY, THE PRATT    :
PARK GROUP, PRATT KARE LLC, PRATT KARE       :
INC., PRATT FORECLOSURE, LLC, HOWELL          :
BRONX LLC, PRATT ESPLANADE LLC, PRATT        :
LENDERS LLC, PRATT LENDERS, INC., PRATT       :
APPLIANCE LLC, PRATT CORTLAND LLC, PRATT   :
SIGNATURE, LLC, PRATT MANAGEMENT LLC,      :
PRATT PARK MANAGEMENT, LLC, PRATT LIFE     :
LLC, PRATT DR TR LLC, MINNEAPOLITAN LLC,    :
MORGAN 86, INC., SAMZ18 LLC,                        :
                                                                             :
                            Defendants.                              :
                                                                             :

-------------------------------------------------------------------x

This indenture made the 14th day of August 2013, between <u>CORTLAND REALTY</u>

<u>INVESTMENTS LLC</u>, <u>JORDAN MOST</u>, <u>SETH FARBMAN</u>, <u>GERALD PINSKY</u>,

<u>MORDECHAI HELLMAN</u>, <u>MOSHE SCHREIBER</u>, <u>SHALOM MAIDENBAUM</u>, <u>CHARLES</u>

<u>SILBERBERG</u> and <u>DEKEL LLC</u>, residing at c/o Allen C. Wasserman, Locke Lord LLP, 3

World Financial Center, City of New York, County of Manhattan,  State of New York, party of

the first part, and Barkany Asset Recovery and Management LLC, having its principal place of

business in New York, and its registered agent at: Locke Lord LLP, Attention: Allen

Wasserman, 3 World Financial Center, New York, NY 10281-2101, party of the second part,

1

WHEREAS, on the 25th day of March, 2013, judgment was recovered in the Supreme Court, County of Queens, in favor of CORTLAND REALTY INVESTMENTS LLC, JORDAN MOST, SETH FARBMAN, GERALD PINSKY, MORDECHAI HELLMAN, MOSHE SCHREIBER, SHALOM MAIDENBAUM, CHARLES SILBERBERG, DEKEL LLC, residing at c/o Allen C. Wasserman, Locke Lord LLP, 3 World Financial Center, New York, New York, and against Gershon Barkany, residing at 622 Jarvis Avenue, Far Rockaway, New York 11691; The Pratt Park Group residing at 77 Spruce Street, Suite 300R, Cedarhurst, New York, 11516; Pratt Kare LLC residing at 77 Spruce Street, Suite 300R, Cedarhurst, New York, 11516; Pratt Kare Inc. residing at 77 Spruce Street, Suite 300R, Cedarhurst, New York, 11516; Pratt Foreclosure, LLC residing at 77 Spruce Street, Suite 300R, Cedarhurst, New York, 11516; Howell Bronx LLC residing at 77 Spruce Street, Suite 300R, Cedarhurst, New York, 11516; Pratt Esplanade LLC residing at 77 Spruce Street, Suite 300R, Cedarhurst, New York, 11516; Pratt Lenders LLC residing at 77 Spruce Street, Suite 300R, Cedarhurst, New York, 11516; Pratt Lenders, Inc. residing at 77 Spruce Street, Suite 300R, Cedarhurst, New York, 11516; Pratt Appliance LLC residing at 77 Spruce Street, Suite 300R, Cedarhurst, New York, 11516; Pratt Cortland LLC residing at 77 Spruce Street, Suite 300R, Cedarhurst, New York, 11516; Pratt Signature, LLC residing at 77 Spruce Street, Suite 300R, Cedarhurst, New York, 11516; Pratt Management LLC residing at 77 Spruce Street, Suite 300R, Cedarhurst, New York, 11516; Pratt Park Management, LLC residing at 77 Spruce Street, Suite 300R, Cedarhurst, New York, 11516; Pratt Life LLC residing at 77 Spruce Street, Suite 300R, Cedarhurst, New York, 11516; Pratt DR TR LLC residing at 77 Spruce Street, Suite 300R, Cedarhurst, New York, 11516; Minneapolitan LLC residing at 77 Spruce Street, Suite 300R, Cedarhurst, New York, 11516; Morgan 86, Inc. residing at 77 Spruce Street, Suite 300R, Cedarhurst, New York, 11516; and Samz18 LLC

residing at 77 Spruce Street, Suite 300R, Cedarhurst, New York, 11516, in the sum of SIXTY

SIX MILLION, SIX HUNDRED AND NINE THOUSAND, FOUR HUNDRED AND

TWENTY FOUR DOLLARS AND SEVENTY FOUR CENTS ($66,609,424.74), and said

judgment was duly entered in the office of the Clerk of the County of Queens, on the 25th day of

March, 2013,

WHEREAS, funds were recovered on said judgment to the extent of the sum of TEN

MILLION, SIXTY SIX DOLLARS ($10,066,000.00),

WHEREAS, a partial satisfaction of said judgment was acknowledged to the extent of the

sum of $10,066,000, and filed with the clerk of the County of Queens.

NOW THIS INDENTURE WITNESSETH, that the said party of the first part, in

consideration of TEN ($10.00) Dollars to him duly paid has sold, and by these presents does

assign, transfer and set over, unto the said party of the second part, his executors, administrators,

and his assigns, the said judgment and all sum or sums of money that may be had or obtained by

means thereof, or on any proceedings to be had thereupon.

And the said party of the first part does hereby constitute and appoint the said party of the

second part, his executors, administrators, and his assigns, his true and lawful attorney

irrevocable, with power of substitution and revocation, for the use and at the proper costs and

charges of the said party of the second part, to ask, demand, and receive, and to obtain

executions, and take all lawful ways for the recovery of the money due or to become due on said

judgment; and on payment to acknowledge satisfaction, or to discharge the same; and attorneys

one or more under him for the purpose aforesaid, to make and substitute, and at pleasure to

revoke; hereby ratifying and confirming all that his said attorney or substitute shall lawfully do

in the premises. And the said party of the first part does covenant, that there is now due on the

said judgment the sum of FIFTY-SIX MILLION, FIVE-HUNDRED AND FORTY-THREE

THOUSAND DOLLARS AND SEVENTY FOUR CENTS ($56,543,424.74), and that he will

not collect or receive the same, or any part thereof, nor release or discharge the said judgment,

but will allow all lawful proceedings therein to be taken by the said party of the second part,

saving the said party of the first part harmless of and from any costs in the premises. This

assignment is made without recourse to the party of the first part in any event whatsoever.

IN WITNESS WHEREOF, the party of the first part has hereunto set his hand and seal

the day and year first above written.

ALLEN C. WASSERMAN
LOCKE LORD LLP

ON BEHALF OF

CORTLAND REALTY INVESTMENTS LLC
JORDAN MOST
SETH FARBMAN
GERALD PINSKY
MORDECHAI HELLMAN
MOSHE SCHREIBER
SHALOM MAIDENBAUM
CHARLES SILBERBERG
DEKEL LLC

State of New York          :
                           : ss.:
County of New York         :


On the 14th day of August in the year 2013, before me, the undersigned, personally appeared Allen C. Wasserman, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his/her/their capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

NY 713637v.1

ANN T. RAFFLOER
Notary Public, State of New York
No. 24-4918523
Qualified in Kings County
Certificate Filed in New York County
Commission Expires Feb 1, 20__

5

CERTIFICATE OF CONFORMITY

STATE OF NEW YORK

COUNTY OF NEW YORK

The undersigned does hereby certify that he is an attorney at law duly admitted to practice in the State of New York and is a resident of Kings County, in the State of New York; that he is a person duly qualified to make this certificate of conformity pursuant to Section 299-a of the Real Property Law of the State of New York:  that he is fully acquainted with the laws of the State of New York pertaining to the acknowledgment or proof of deeds of real property to be recorded therein; that the foregoing acknowledgment by Allen C. Wasserman named in the forgoing instrument taken before Ann Raffloer, a notary in the State of New York was taken in the manner prescribed by such laws of the State of being the State in which it was taken; and that it duly conforms with such laws and is in all respects valid and effective in such state.

Jeffrey S. Kramer

_____

Attorney at law for the State of
New York

NY 715861v.1

ANN T. RAFFLOER
Notary Public, State of New York
No. 24-4918523
Qualified in Kings County
Certificate Filed in New York County
Commission Expires Feb 1, 20__

# Exhibit D

B10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT    Eastern District of New York | **PROOF OF CLAIM** |
|---|---|

| Name of Debtor:<br>GERSHON BARKANY | Case Number:<br>14-72941-las |
|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
BARKANY ASSET RECOVERY AND MANAGEMENT LLC

**COURT USE ONLY**

Name and address where notices should be sent:
Allen C. Wasserman, Locke Lord LLP
3 World Financial Center
New York, NY 10281

Telephone number: (212) 812-8306    email:

❏ Check this box if this claim amends a previously filed claim.

**Court Claim Number:**_____
(*If known*)

Filed on:_____

Name and address where payment should be sent (if different from above):



Telephone number:    email:

☑ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:**    $_____ 51,221,629.10    SEE ANNEX

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** __Judgment based on theft and/or embezzlement of funds_____
(See instruction #2)

| **3. Last four digits of any number by which creditor identifies debtor:**<br><br>__ __ __ __ __ | **3a. Debtor may have scheduled account as:**<br>_____<br>(See instruction #3a) | **3b. Uniform Claim Identifier (optional):**<br>__ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __<br>(See instruction #3b) |
|---|---|---|

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ❏Real Estate ❏Motor Vehicle ❏Other
**Describe:**

**Value of Property:** $_____

**Annual Interest Rate_____%** ❏Fixed or ❏Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:

$_____

**Basis for perfection:** _____

**Amount of Secured Claim:** $_____

**Amount Unsecured:** $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.**

❏ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

❏ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

❏ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

❏ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

❏ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

❏ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(___).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

2

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8)

Check the appropriate box.

❏ I am the creditor.　☑ I am the creditor's authorized agent.　❏ I am the trustee, or the debtor,　❏ I am a guarantor, surety, indorser, or other codebtor.
　　　　　　　　　　　　　　　　　　　　　　　　　　　　or their authorized agent.　　　　　(See Bankruptcy Rule 3005.)
　　　　　　　　　　　　　　　　　　　　　　　　　　　　(See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:　S. David Belsky
Title:　Member
Company:　Barkany Asset Recovery and Management LLC
Address and telephone number (if different from notice address above):

　　　　　　　　　　　　　　　　　　　_S. David Belsky_　　　_3/9/15_
　　　　　　　　　　　　　　　　　　　(Signature)　　　　　　(Date)

Telephone number:　　　　　　email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the

claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided in the proof of claim is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

ANNEX TO PROOF OF CLAIM

Barkany Asset Management and Recovery LLC

Barkany Asset Management and Recovery LLC ("BARM") claims loss sustained due to theft and/or embezzlement of funds practiced by debtor Gershon Barkany, as described in that Affidavit of Confession of Judgment executed by Gershon Barkany dated August 1, 2011, which Affidavit is attached to that Judgment entered on March 25, 2013 entered by the Supreme Court of the State of New York, County of Queens, under Index No. 5619/2013 captioned Cortland Realty Investments LLC, et al vs. Gershon Barkany, et al.  The Judgment has been assigned to BARM.  Copies of the Judgment, a Partial Satisfaction and the Assignment are attached.  BARM understands that some or all of the judgment creditors and/or other persons who have interests in the award made in the Judgment are also filing proofs of claim.

The $51,221,629.10 claimed by BARM consists of the $58,000,000.00 principal amount of the Judgment, plus $8,609,424.74 in interest accrued from August 1, 2011 through the March 25, 2013 date of the Judgment, plus $7,505,878.46 in interest accrued from March 25, 2013 through June 25, 2014, less a $22,893,674.10 credit for recoveries (comprised of the $10,066,000.00 credit recognized in the Partial Satisfaction and an additional $12,827,674.10 credit for recoveries not included in the Partial Satisfaction).  BARM reserves the right to amend and/or supplement its claim, including without limitation the right to claim attorneys' fees and other costs and expenses incurred by BARM and/or the judgment creditors in attempting to mitigate the loss caused by Gershon Barkany.

BARM reserves all rights not expressly waived, including without limitation (i) any right to have final orders in non-core matters entered only after de novo review by a District Court; (ii) any

right to a jury trial where available; (iii) any right to have the reference withdrawn by the District

Court in any matter subject to withdrawal; and (iv) any rights, claims, actions, defenses, setoffs,

or recoupments to which BARM is or may be entitled under agreements, in law or, in equity, all

of which are reserved.