UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

In Re:                                                                    Chapter 7

GERSHON BARKANY,                                       Case No. 814-72941-845-las

                    Debtor.
-------------------------------------------------------X
Marc A. Pergament, Interim Chapter 7 Trustee
Of the Estate of Gershon Barkany,                    Adv. Pro. No. 8-15-08244-las

                    Plaintiff,

                    -against-

Alan Gersson, Bruce Montague & Partners,
Charber Realty, Alfred Schonberger, Marina
District Development Co. LLC, Barkany Asset
Recovery & Management LLC, Daniel Hirschler,
Joseph Rosenberg and Goldberg & Rimberg,
PLLC,

                    Defendants.

---------------------------------------------------------X

## DEFENDANT GOLDBERG & RIMBERG, PLLC'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE COMPLAINT AND CROSS-CLAIMS

        Defendant Goldberg & Rimberg, PLLC ("G&R") submits this Memorandum of Law in

further support of their motion made pursuant to Fed. R. Bank. P. 7012(b) and Fed. R. Civ. P.

12(b)(6) seeking to dismiss the Complaint and cross-claims asserted against G&R for failure to

state a claim upon which relief may be granted ("Motion").

        Plaintiff, Marc A. Pergament, Interim Chapter 7 Trustee of the Estate of Gershon

Barkany (the "Interim Trustee") submits opposition papers that ignore the bulk of Motion.

Instead of discussing the merits of the allegations in the Complaint, including those allegations

refuted by the documentary evidence submitted with the Motion, the Interim Trustee rests his entire opposition on the inapplicable decision of *Gowan v. Patriot Group, LLC (IN re Dreier LLP)*, 452 B.R. 391 (Bankr.S.D.N.Y. 2011).  The facts in *Gowan* are entirely distinguishable from those alleged in the Complaint.

**<u>The Interim Trustee Does Not Address Many Integral Facts Contained in the Motion</u>**

There are no allegations in the Complaint that identify point in time when the funds paid by the Hilman Partnership to Gerson's attorney escrow account, as a result of what all parties agree to have been criminally fraudulent conduct, became a Barkany asset.  Instead, the Complaint is clear that the $750,000 transferred by the Hilman Partnership to Gerson's escrow account was for the specific purpose of investing in the real property at 103 West 28th Street. (Complaint, ¶¶ 28-31).  The Interim Trustee does not dispute that the Complaint contains no allegations that the subject $750,000 was paid to or for the benefit of the Debtor.

The Interim Trustee does not address the fact that, contrary to the allegations in the Complaint, the $18,900 was not received by G&R on behalf of the Hilman Partnership on March 13, 2013; the date when, the rest of the Hilman Partnership monies were apparently sent out of Gerson's escrow account to the other defendants.  Nor does he address the fact that the bank records submitted with the Motion indicate that the $18,900 was returned from Gerson's trust account to the GR Trust account, on behalf of the Hilman Partnership on May 14, 2013, after the Hilman Partnership had filed suit against Gerson, Bruce Montague & Partners and the Debtor.

**<u>The *Gowan* Decision is Not Applicable</u>**

By relying only upon the *Gowan* decision, the Interim Trustee has put all of his proverbial "eggs in one basket".  The *Gowan* decision is long, 49 pages when printed from Westlaw; however, it does not appear that the Interim Trustee actually read the pertinent pages of

that decision, and instead decided to pick certain quotes entirely out of context.  The motion to dismiss was denied in *Gowan* based upon the argument made by the *Gowan* plaintiff/trustee that the subject bank account, which was controlled by the debtor law firm, was not actually a trust account.  The Complaint herein does not contain any allegation that the Gerson Trust Account was not really a trust account; nor are there allegations in the Complaint that the Debtor had any control over the Gerson Trust Account.

   *Gowan* concerned a Ponzi scheme committed by Marc Dreier, an attorney "who built a successful 200-plus lawyer firm based in New York --- Dreier LLP – unique in that he was the firm's sole equity partner." *Id.*  452 B.R. at 398.  The debtor in *Gowan* was Dreier LLP.  The subject bank account in the adversary proceedings in *Gowan* was:

> "the firm's account entitled "Dreier LLP Escrow Account" with the last four digits of "5966" (the "5966 Account").  **It is undisputed that the 5966 Account contained commingled funds from firm clients, Note investors and law firm operating revenue. Marc Drier controlled deposits and withdrawals from the 5966 Account, and used the funds in the account at will to pay for his lavish lifestyle, to fund the operations of his law firm, when necessary, and to make payments to earlier clients and Note investors whose funds he had earlier stolen from the 5966 Account**."

452 B.R. at 399 (emphasis added).

   Here, the Complaint alleges that the subject funds were deposited "into an escrow account maintained by defendant Gerson." Complaint, ¶ 35.  Gerson is not the Debtor.  The Debtor herein is not an attorney and there are no allegations in the Complaint that the Debtor had control over Gerson's escrow account.

In *Gowan*, Dreier, the attorney Ponzi schemer, controlled the subject account and all of the parties agreed that the account contained all sorts of commingled funds. Here, there are no allegations as to commingling. Instead, the Complaint alleges that the Hillman Partnership wired $750,000 to Gerson's trust account and then the $750,000 was disbursed to the named defendants. There is no plausibility to the Interim Trustee's conclusory allegations that at some point, as a result of the Debtor's criminally fraudulent conduct, the monies became property of the estate.

Neither the Complaint nor the opposition papers allege that Gerson's escrow account was anything but a bona fide attorney trust account. On the contrary, the Interim Trustee's Memorandum of Law recognized that the Debtor had no control over Gerson's attorney escrow account stating, "whether Gerson transferred the funds in BMP's escrow account with or without the Debtor's authorization is irrelevant at this state of the litigation." Interim Trustee's Memorandum of Law, p. 8. By conceding that the subject account was an attorney trust account, the Interim Trustee has conceded that *Gowan* is wholly inapplicable.

*Gowan* states:

"Although titled an "escrow" or "trust" account, the 5966 Account was used for purposes other than holding Dreier LLP client escrow funds. (*Id.*) Funds from the fraud deposited in the 5966 Account were commingled with legitimate client funds, Dreier LLP operating funds, and funds from other Dreier LLP Accounts. (*Id.*) Funds held in the 5966 Account were transferred for different purposes, including return of funds to actual Dreier LLP clients, payments of principal and interest to investors in the Note Fraud, and distribution to other Dreier-owned accounts."

*Id.,* 452 B.R. at 403. There are no similar allegations made in the Complaint herein.

4

In *Gerson*, the trustee argued:

> "that funds in the 5966 Account were property of the Debtor and all funds transferred out of the 5966 Account were property of the Debtor because the trust account was a "trust" in name only. (Mem. of Law in Opp. to Defendants' Mot. to Dismiss (ECF Doc. # 18, Adv. Pro. No. 10–04277) ("Trustee Opp. to Xerion Mem.") at 6–8.) Specifically, the complaints allege that the 5966 Account was in substance a "hopelessly commingled" account holding "deposits from investors in the Note Fraud, legitimate client funds, and DLLP operating funds" in addition to funds from other Dreier LLP accounts that were deposited in and/or transferred to Account 5966. (*See* Compl. ¶ 23.) The Trustee argues that the mere fact that the account into which the defendants deposited their funds was labeled a trust account is not enough to establish that the defendants deposited "trust funds" into the account."

*Id.* 452 B.R. at 416.

The *Gowan* decision found that:

> "Neither the language in the complaints, nor any of the documents that may be considered on the motions to dismiss, establish as a matter of law that the funds deposited by the defendants into the 5966 Account or the money used to repay the defendants from the 5966 Account were "trust funds." Indeed, to succeed on her avoidance claims, the Trustee will have to prove the transfers she seeks to avoid were of property of Dreier LLP. The outcome of that issue raises disputed issues of fact and law that cannot be resolved at the motion to dismiss stage."

*Id.* 452 B.R. at 416. The Interim Trustee herein does not make the argument that the Gerson Attorney Trust Account contained funds that were not trust funds. The Complaint does not

attempt to allege how it could be that the identifiable $750,000 paid into an attorney trust account as a result of what everyone agrees was criminal conduct and then paid out to third-parties (except G&R) that same day, somehow became property of the estate.

The Interim Trustee claims that the "*Gowan* decision also undermines the line of cases cited by G&R for the proposition that the funds never became property of the Estate.  (*See* G&R MOL, pp. 6-8)."  Interim Trustee's Memorandum of Law, p. 7.  On the contrary, the *Gerson* court acknowledged the distinction between the facts alleged therein and those cases, such as that herein, which concerned an actual trust account:

> "The 5966 Account contained commingled funds, as was conceded by all parties at the Hearing, so it was not strictly speaking a "trust fund." This is a crucial distinction, as the *Boulder Capital* court recognized in a footnote:
>
>> In support of its trust arguments Boulder relies heavily on *Daly v. Kennedy (In re Kennedy* ), 279 B.R. 455 (Bankr.D.Conn.2002). *Kennedy* is inapposite. The court in *Kennedy* assumed the existence of a trust when making its determination that certain transferred funds were not property of the estate. *See id.* at 458–59. The Court agrees that funds held in trust by a debtor for the benefit of a third party are not funds of the estate. But as the *Kennedy* court presumed the existence of a trust, it has no precedential value on the issue whether a litigant has standing to litigate the existence of a trust on behalf of a third party.

*The 1031 Tax Grp., LLC,* 439 B.R. at 64 n. 4. The distinction is critical, because in the case of commingled accounts, there is a presumption that money used to repay a defendant in a preference action "could have been used to pay other creditors" and " 'presumptively constitutes property of the debtor's estate.' " *Cassirer v. Hershkowitz (In re Schick),* 234 B.R. 337, 343 (Bankr.S.D.N.Y.1999) (citation omitted). This presumption shifts the burden from the trustee to the defendant upon a showing by the trustee that the funds came from a

commingled account to which the debtor held legal title. *Id.* Because of this presumption, the defendant **in an avoidance action involving a commingled account has the burden of proving that the debtor only held legal title**. *Id.* at 343–44. Here, it is undisputed that the 5966 Account was a commingled account.

*Id.* 452 B.R. at 420 (emphasis added). *Gowan* does not discuss the facts at issue in the Complaint in which a debtor commits fraud to convince someone to pay a deposit with respect an identifiable real estate purchase to be held in a third-party attorney trust account.

*Gowan* states, "Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not "property of the estate." 452 B.R. at 415, citing *Beiger v. IRS*, 496 U.S. 53, 58, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990). Further, *Gowan* acknowledges, "whether the challenged transfers can be avoided by the Trustee depends on whether the funds used to repay the defendants were property of the Debtor at the time they were paid, or whether the funds were trust funds in which Dreier LLP had no equitable interest." *Id.*, 452 B.R. at 415. *Gowan* entirely supports the cases cited by G&R in its Memorandum of law for the premise that the monies that were paid into Gerson's attorney escrow account could not have been property of the estate.

The wire instructions are clear that the subject monies were being wired to "ALAN GERSON ESQ. IOLA TRUST ACCOUNT" with a reference to "103 West 28th, NYC". Schneck Declaration, **Exhibit "A"**. There are no allegations made that such account was not in fact an attorney Iola Trust Account.

There are no questions of fact that the $750,000 was wired from The Hilman Family Partnership to the Gerson's Attorney Trust Account as a result of fraud. The Interim Trustee chose ignore the fact that there is no legal or factual basis for a determination that such monies,

transferred as a result of criminal fraud, should be deemed property of the estate. The reason for the Interim Trustee's silence on this issue is simple – there is no basis for this conclusion and the lawsuit is entirely frivolous. As the Interim Trustee concedes that the monies were paid in to the attorney trust account as a result of fraud, there is no question of fact that the trustee has no ownership interest in such monies.

While the Interim Trustee chose to not address the uncontroverted law cited in the Motion that stolen property does not become property of the estate, there are additional cases which concur with those originally cited.     In *Tedesco v. Mishkin (In re Mishkin)* 138 B.R. 410 (S.D.N.Y. 1992), a debtor converted investors' funds and took title to a condo in his own name rather than in partnership names. The *Mishkin* court stated the following regarding proceeds escrowed from the bankruptcy trustee's sale of the condo, which occurred over the investors' objection:

> "The escrow funds in question do not constitute collateral which could be considered property of the estate within the meaning of 11 U.S.C. § 541. These funds were stolen from the plaintiffs by the debtors, who have no legitimate title claim to the proceeds; they are not collateral to which the debtors' estates may assert any claim of right."

138 B.R. at 412.

In *Lopresto v. Department of Revenue,* State of Florida (*In re Iorizzo*), 114 B.R. 19 (E.D.N.Y.) cited by *Mishkin*, the court held "the law is clearly established that property obtained by fraud is not part of the bankrupt's estate, this rule is based on a policy that property should remain in the hands of the rightful owner."

In *Nicklaus v. Bank of Russelville*, 336 F.2d 144 (8th Cir. 196), the court stated:

> "[A] Trustee in Bankruptcy can have no interest in property acquired by the fraud of a bankrupt, or anyone else, as against the claim of the rightful owner of such property. Cf.

Collier on Bankruptcy, 14th Ed., Vol. 3, § 60.18. 'Creditors have no right to profit by the fraud of a bankrupt, to the wrong and injury of the one defrauded.' 9 Am.Jur. 2d, § 903, p. 667."

336 F.2d at 146.  The *Russelville* court continued:

"In the case at bar appellant, as Trustee in Bankruptcy, does not state even a colorable claim as to his title or right to possession of the property here considered. It is apparent that the fraud, which he admits existed, was not perpetrated against his bankrupt; or by a person who received possession of property rightfully belonging to his bankrupt. Property obtained by fraud of the bankrupt, or by other tort, is not properly a part of the assets of a bankrupt's estate."

336 F.2d at 147.  *Russelville* is entirely on point – the Complaint herein does not state even a colorable claim as to the Interim Trustee's right to possession of the property at issue.

In *Bergquist v. Wiese & Cox, Ltd. (In re A.E.F.S., Inc.)*, 51 B.R. 340 (Bankr. D. Minn. 1985), the trustee sought turnover as property of estate, funds in a special trust account controlled by debtor's attorneys.  The trustee conceded that the money was obtained through the debtor's fraud.  The *A.E.F.S.* court said that property obtained by fraud of debtor does not properly become part of the assets of a debtor's estate.  Legal title to the fund was in the attorneys.  Since debtor didn't have legal title at time of bankruptcy filing, no legal interest passed to the trustee.  "Assuming the fund was proceeds of fraud, trustee acquired no equitable interest either.  Equitable interest remained in defrauded parties."  51 B.R. at 344.  Here, where the subject monies were paid into Gerson's attorney trust account as a result of fraud, the resulting disbursals of such monies were not interests of the Debtor's property.  *See Also*, *Heyman v. Kemp (In re Teltronics, Ltd.)* 649 F.2d 1236, 1239 ("it is settled that property obtained by fraud of the bankrupt is not part of the bankrupt's estate").

## CONCLUSION

The allegations in the Complaint fail to state a claim that there is any property of the estate at issue.  The Interim Trustee's half-hearted opposition, which cites no applicable law, does not rectify the pleading deficiencies.

For the reasons stated above, the Complaint and Cross-Claims should be dismissed in their entirety, with prejudice.

Dated: November 13, 2015

SCHACHTER PORTNOY, L.L.C.

By:_____/S/ Joel S. Schneck
Joel S. Schneck
Co-Counsel for defendant
*Goldberg & Rimberg, PLLC*
3490 U.S. Route 1
Princeton, New Jersey 08540
(609) 514-8668

GOLDBERG & RIMBERG, PLLC
*Pro Se* Co-Counsel for defendant
*Goldberg & Rimberg, PLLC*
115 Broadway, Suite 302
New York, New York 10006
(212) 697-3250